UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LEEROY DANIELS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No.: 1:16-cv-405-CHS |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM

I.    Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Leeroy Daniels's ("Plaintiff") claim for Supplemental Security Income ("SSI"), as provided by the Social Security Act.

The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 16]. Pending before the Court are Plaintiff's Motion for Judgment on the Administrative Record [Doc. 22] and Defendant's Motion for Summary Judgment [Doc. 24].

For the reasons stated herein, the Court **AFFIRMS** the Commissioner's decision. Accordingly, the Court **DENIES** Plaintiff's motion [Doc. 22] and **GRANTS** Defendant's motion [Doc. 24].

II. Background

    A. Procedural History

In December 2012, Plaintiff protectively filed for SSI under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*, based on right eye blindness, a learning disorder, and illiteracy[1] [Tr. 194, 224].[2] Plaintiff's claims were denied initially and on reconsideration [Tr. 70, 86]. On July 20, 2015, Plaintiff testified via videoconference at a hearing before Administrative Law Judge ("ALJ") Thomas Sanzi [Tr. 40-56]. On July 27, 2015, the ALJ issued a partially favorable decision finding that Plaintiff was disabled as of January 16, 2015, but not prior to that date [Tr. 18-33]. On August 8, 2016, the Appeals Council denied Plaintiff's request for review [Tr. 1-3]. Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g).

    B. Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently forty-one years old. He completed tenth grade and last worked as a construction laborer in October 2010 [Tr. 224-225, 232]. At the time of his alleged onset date of October 5, 2011, Plaintiff was thirty-five years old [Tr. 194]. On the application date, Plaintiff was thirty-six years old [*Id.*].

*Plaintiff's Testimony and Medical History*

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Judgment on the Administrative Record [Doc. 22].

[2] An electronic copy of the administrative record is docketed at Doc. 13.

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 416.971 *et seq.*).

2. Since the alleged onset date of disability, October 5, 2011, the claimant has had the following severe impairments: intellectual disability; learning disability. Beginning on the established onset date of disability, January 16, 2015, the claimant has had the following severe impairments: intellectual disability; learning disability; degenerative disc disease (20 CFR 416.920(c)).

3. Prior to January 16, 2015, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, I find that, prior to January 16, 2015, the date the claimant became disabled, the claimant had the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: He was limited to jobs involving only occasional peripheral acuity and depth perception. The claimant was limited to work involving simple, routine tasks, in a low-stress environment, which is defined as having only occasional decision-making required and only occasional changes in the work setting. He should have had only occasional interaction with the public. The claimant should have been allowed to be off-task 5 percent of the workday, in addition to normal breaks.

5. The claimant has no past relevant work (20 CFR 416.965).

6. Prior to the established disability onset date, the claimant was a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in

English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

9. Prior to January 16, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969(a)).

10. Beginning on January 16, 2015, the severity of the claimant's impairments has met the criteria of section 12.05 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.925).

11. The claimant was not disabled prior to January 16, 2015, (20 CFR 416.920(g)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(d)).

[Tr. 20-32].

### III. Analysis

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he is disabled; (4)

4

if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering his age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*,

5

790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B.  Discussion

Plaintiff presents two issues for review: (1) whether the ALJ erred in finding that he did not meet Listing 12.05 prior to January 16, 2015; and (2) whether the ALJ erred in making conclusions that only could have been made by a medical expert [Doc. 23 at 4-9].

*1. Consideration of Listing 12.05*

The ALJ found that Plaintiff's impairments met the severity of Listing 12.05C beginning on January 16, 2015 [Tr. 31-32]. Plaintiff argues that his impairments met the criteria for Listing 12.05B and 12.05C prior to January 16, 2015 [Doc. 23 at 4-6].

The disability listings contain over one hundred conditions "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). The listing of impairments "[used at] step three

6

streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). The burden of proof lays with the claimant at steps one through four of the five-step sequential disability evaluation. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). Thus, the claimant bears the burden at step three of demonstrating all of the required listing-level findings. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. 416.925(c)(3) ("We will find that your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing . . . and meets the duration requirement").[3] As the Sixth Circuit has explained, "[i]t is insufficient that a claimant comes close to meeting the requirements of a listed impairment." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).

To meet Listing 12.05B, a claimant must establish a valid verbal, performance, or full scale IQ of 59 or less. 20 C.F.R. Pt. 404, Subpart P., App. 1, §§ 12.00A, 12.05B. Plaintiff claims that he met 12.05B because school records documented a verbal IQ of 59 at the age of fifteen, and a consultative examination taken in 2013 documented a full scale IQ of 48 and a verbal IQ of 54 [Tr. 330, 422-423; Doc. 23 at 4-5].

To be "valid," an IQ score "must reflect the plaintiff's true abilities as demonstrated by his or her performance at work, household management and social functioning." *Brown v. Sec'y*

---

[3] The "duration requirement" means that a claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

*of Health & Human Servs.*, 948 F.2d 268, 269 (6th Cir. 1991). An ALJ may reject IQ scores that are inconsistent with the record. *Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313, 315 (6th Cir. 2001) (affirming the ALJ's rejection of a claimant's IQ scores as inconsistent with the record and noting that "the ALJ should examine test results of this sort to assure consistency with daily activities and behavior"). "The ALJ may choose to disregard IQ scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation." *Jackson v. Comm'r of Soc. Sec.*, No. 1:13-cv-572, 2014 WL 6673613, at *6 (S.D. Ohio Nov. 21, 2014) (citing *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 462 (6th Cir. 2012); *see also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 869, 872 (6th Cir. 2003).

In this case, substantial evidence supports the ALJ's conclusion that the IQ testing evidence of record is not a valid representation of Plaintiff's overall functioning. The ALJ found that the narrative reports accompanying the IQ test results indicated that the extremely low scores were not valid indicators of Plaintiff's functioning [Tr. 23]. The ALJ observed that, although Plaintiff had a verbal IQ score of 59 in 1992, the school psychologist noted that his scores were higher on testing three years earlier [Tr. 23, 291, 301]. The school psychologist stated that Plaintiff's full-scale IQ score of 64 was likely a better overall indicator of his functioning [Tr. 23, 299-301].

The ALJ also noted that during the February 2013 consultative evaluation, Dr. O'Connell stated that Plaintiff's IQ scores should be interpreted with caution because Plaintiff had obtained higher scores on testing as a child [Tr. 23, 331-332]. Additionally, Dr. O'Connell gave a rule out diagnosis of malingering, in part because Plaintiff "demonstrated minimal effort on testing," thus suggesting to the ALJ that Dr. O'Connell did not believe that Plaintiff's performance was

entirely valid [Tr. 23, 26, 331-332].

The state agency psychological consultants reviewed this evidence and indicated that Plaintiff's IQ scores did not meet the criteria for Listing 12.05B [Tr. 63, 79-80]. They noted that Plaintiff appeared to malinger to some extent, but that he had "valid mild mental retardation" [Tr. 63, 79-80]. [4] The ALJ gave these opinions considerable weight [Tr. 28].

Considering the narrative reports accompanying the test results, the opinions of the state agency psychological consultants, and Plaintiff's reported daily activities, the ALJ concluded that Plaintiff did not have a valid IQ score of 59 or lower [Tr. 23, 26-29]. These are sound reasons to support the ALJ's decision that Plaintiff did not meet Listing 12.05B. Although Plaintiff may be correct that the ALJ *could have* found the IQ results in question valid, thus satisfying Listing 12.05B, the ALJ's decision to the contrary is nevertheless supported by substantial evidence.

Plaintiff also argues that he meets Listing 12.05C, which requires: "(1) significantly sub average general intellectual functioning with deficits in adaptive functioning prior to age twenty-two; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) another physical or mental impairment imposing an additional and significant work-related limitation of function." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00A, 12.05C (other citations omitted)). Here, the ALJ determined that Plaintiff had a valid IQ score between 60 and 70, but that he did not have another physical or mental impairment imposing an additional and significant work-related limitation of function

---

[4] The Court notes that the relevant Listing refers to this disability as Intellectual Disability, 20 C.F.R. Pt. P, App. 1, § 12.05, and that the passage of Rosa's Law in 2010 eliminated references to "mental retardation" and "the mentally retarded" in federal law and replaced them with "intellectual disability" and "individuals with intellectual disabilities." Pub. L. No. 111-256, 124 Stat. 2643.

prior to January 16, 2015 [Tr. 24].[5]

After reviewing the record and the ALJ's decision, the Court concludes that the ALJ's decision is supported by substantial evidence. As an additional physical impairment, Plaintiff alleged that he had a significant vision problem, including right eye blindness and "floaters" in the left eye [Tr. 25]. However, the ALJ found that the record did not establish that the alleged visual impairment was a severe impairment [Tr. 21]. The ALJ noted that, although Plaintiff alleged blindness in his right eye since childhood, he passed a vision screening at age 15 [Tr. 21, 298-299]. The ALJ also noted that the record contained limited treatment or evaluation for any visual impairment [Tr. 25]. At an eye examination in April 2013, Dr. Mabry found visual acuity of 20/50 and generalized constriction of the visual fields in the left eye, but stated that there was no specific reason for the decrease in his left eye vision [Tr. 21, 25, 383, 386-388]. The ALJ also noted that Dr. Mabry had observed structural abnormalities and 20/400 vision in the right eye [Tr. 25]. However, in May 2013, Dr. Randall reviewed the records and noted that an individual with such limited visual fields would have difficulty avoiding even ordinary hazards [Tr. 21, 25, 394]. Plaintiff displayed no evidence of such difficulties, suggesting that the results of visual field testing might not be valid [Tr. 21, 25, 394].

The ALJ considered all of this evidence and decided to account for Plaintiff's non-severe vision impairment in the Residual Functional Capacity by limiting Plaintiff to only occasional peripheral acuity and depth perception [Tr. 24]. *See* 20 C.F.R. § 416.923; *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (the ALJ "must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe")

---

[5] The ALJ found that Plaintiff's treatment records established a severe back impairment as of January 16, 2015 [Tr. 20]. Accordingly, the ALJ found that Plaintiff met the criteria of Listing 12.05C on that date [Tr. 31-32].

(citation omitted). As the ALJ noted, pursuant to Social Security Ruling 85-15, the occupational base of work at all exertional levels is not affected by a vision impairment so long as a person "retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace)" [Tr. 25]. Consistent with the state agency medical consultants, the ALJ found no evidence in the record demonstrating that Plaintiff's visual problems would prevent him from negotiating ordinary hazards or handling relatively large objects [Tr. 21, 25-26, 62-63, 78-79]. Accordingly, the ALJ found that because Plaintiff's vision problems did not impose significant work-related limitations and were not severe impairments, Plaintiff did not meet the criteria of Listing 12.05C prior to January 2015 [Tr. 20-21, 25-26].

Plaintiff is correct that there is some evidence that supports his allegation of a severe eye impairment. However, the issue before the Court is whether substantial evidence supports the ALJ's decision. Plaintiff must do more than simply point to countervailing evidence in the record. *See Peterson*, 552 F. App'x at 540 ("Merely marshalling evidence to suggest that [the claimant] is disabled, however, is insufficient; to prevail on appeal, [the claimant] must demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence."). Upon review of the record, the Court concludes that substantial evidence supports the ALJ's decision.

2. *Medical Expert*

Next, Plaintiff argues that the ALJ erred by substituting his own medical judgment for that of a physician and that he should have obtained the testimony of a medical expert to interpret the medical evidence of record [Doc. 23 at 6-9].

11

The Regulations provide that an ALJ "may . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s). . . ." 20 C.F.R. § 416.927(e)(2)(iii); *see also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009).[6] However, the ALJ has discretion to decide whether a medical expert is necessary. *See Simpson*, 344 F. App'x at 189; *Lance v. Astrue*, No. 3:07-cv-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008). "So long as there is sufficient evidence in the record on which the ALJ can make a determination of disability, the ALJ retains this discretion." *Ruby v. Colvin*, No. 2:13-cv-01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5, 2015) (citing *Simpson*, 344 F. App'x at 189; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)). Thus, where an ALJ "has evidence including the claimant's medical history, daily activities, treating physician's opinions, and state agency opinions, the evidence is sufficient for the ALJ to choose not to call a medical expert." *Id.* (citing *Simpson*, 344 F. App'x at 189); *see also* Report and Recommendation entered in *Burlingame v. Astrue*, No. 2:11-cv-817, 2012 WL 2953057, at *7 (S.D. Ohio July 19, 2012), and adopted by the court, No. 2:11-cv-817, 2012 WL 3879952 (S.D. Ohio Sept. 6, 2012) (finding that ALJ did not abuse his discretion in failing to call a medical or psychological expert when the record contained the opinions of two state agency psychologists who had concluded that the claimant did not meet or equal any listed impairment).

The Court is not persuaded that the ALJ abused his discretion in this case by failing to seek the opinion of a medical expert. The ALJ thoroughly reviewed the medical and nonmedical

---

[6] The Social Security Administration revised its rules regarding the evaluation of medical evidence. 82 Fed. Reg. 5844-01, 2017 WL 168819. The revised regulations went into effect on March 27, 2017, *id.*, and are not applicable to this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

evidence and cited it in support of his legal conclusions. Reviewing and weighing medical reports to make a legal determination is precisely the ALJ's function. *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014) ("As the ALJ properly reviewed and weighed the reports to make a legal determination that is supported by substantial evidence, the assertion that the ALJ was 'playing doctor' is unsupported."); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

As discussed above, the ALJ's conclusions related to Plaintiff's IQ scores and alleged vision impairments were consistent with the medical professionals' findings and opinions. The ALJ weighed the medical evidence as required by the Regulations. However, there is no evidence in the record that the ALJ substituted his lay opinion for that of a physician. Plaintiff has failed to demonstrate that the ALJ abused his discretion by not obtaining testimony from a medical expert. Accordingly, the Court concludes that Plaintiff is not entitled to relief on this issue.

IV. Conclusion

Having reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Court concludes that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, it is hereby **ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record [Doc. 22] is

**DENIED,** the Commissioner's Motion for Summary Judgment [Doc. 24] is **GRANTED**, and the Commissioner's decision is **AFFIRMED**. This action is hereby **DISMISSED** and the Court directs the Clerk to **CLOSE** the case. A separate judgment will enter.

*/s/Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE